ELECTRONICALLY FILED
COURT OF COMMON PLEAS
Friday, November 12, 2010 4:20:26 PM
CASE NUMBER: 2010 CV 08965 Docket ID: 15620240
GREGORY A BRUSH
CLERK OF COURTS MONTGOMERY COUNTY OHIO

IN THE COMMON PLEAS COURT OF MONTGOMERY COUNTY, OHIO
CIVIL DIVISION

| | | |
|---|---|---|
| STAN SOLUTIONS, LLC | : | CASE NO.: |
| 714 East Monument Avenue | | |
| Suite 117 | : | JUDGE: |
| Dayton, Ohio 45402 | | |
| | : | |
| Plaintiff, | | |
| | : | |
| v. | | |
| | : | |
| SIERRA NEVADA CORPORATION | | **COMPLAINT FOR DAMAGES** |
| a Nevada corporation registered to conduct | : | |
| business in Ohio | | |
| c/o Statutory Agent CSC-Lawyers | : | |
| Incorporating Service (CSC) | | |
| 500 W. Broad Street | : | |
| Suite 1800 | | |
| Columbus, Ohio 43215 | : | |
| | | |
| Defendant. | : | |

Now comes the Plaintiff, STAN Solutions, LLC ("STAN Solutions"), by and through counsel, and for its Complaint for Damages against Defendant, Sierra Nevada Corporation ("SNC") states as follows:

## NATURE OF ACTION

1. This is a civil action for damages arising from Defendant's repeated refusal to pay STAN Solutions for work performed pursuant to an agreement between the parties.

## PARTIES, JURISDICTION AND VENUE

2. STAN Solutions, LLC is a properly registered and existing Ohio Limited Liability Company having a principal business address of 714 East Monument Avenue, Suite 117, Dayton

Ohio 45402. STAN Solutions specializes in, among other things, providing innovative network systems and sensor technologies to the United States Military.

3. Sierra Nevada Corporation is a privately held Nevada corporation registered to conduct business in Ohio with an Ohio office address of 2611 Commons Boulevard, Beavercreek, Ohio 45431. SNC holds itself out as a world-class prime systems integrator and electronic systems provider.

4. Venue and jurisdiction are proper in Montgomery County, Ohio, under Ohio Civil Rules 3(B)(1) and 3(B)(2) and 3(B)(6), as the events giving rise to STAN Solution's claims for relief occurred, in whole, in Montgomery County, Ohio.

## FACTS

5. STAN Solutions provides technology and assistance to U.S. military personnel in Iraq and Afghanistan, as a subcontractor for the U.S. Department of Defense. Formerly known as AKSI Solutions, LLC, the company worked on innovations in technology and project leadership in conjunction with the Naval Postgraduate School ("NPS") in 2002 through 2005. The collaborative work became known as the STAN Experiments.

6. By way of background, the STAN Experiments were the result of the initiative of Chief Warrant Officer 2 ("CW2") Christopher Manuel (United States Army) to overcome a battlefield tragedy: the death of fellow soldier CW2 Stanley Harriman due to misdirected friendly fire. Thus, the term "STAN" was an acronym to honor Harriman, and to describe the project: Surveillance and Target Acquisition Network.

7. SNC is a prime contractor for the United States Department of Defense. The Department of Defense requested SNC act as a prime contractor in order to assist AKSI Solutions, LLC with

the STAN Experiments because ASKI Solutions, LLC did not have the infrastructure or resources to be a prime contractor for the Federal government.

8. SNC developed and marketed to the Federal government various products based on the technology and concepts developed during the STAN Experiments. One such product was a handheld voice, data, video, and mapping communications systems, which included vehicle mounted base stations that provided communications links back to command centers. The handheld device, named the Tacticomp, and the underlying tactical network, Tactinet, were specifically developed utilizing STAN Solutions' technology.

9. Based on this technology, SNC was awarded a prime contract from the Federal government to deploy Tacticomp and Tactinet technology in Iraq and Afghanistan (commonly referred to as the Tactical Handheld Digital Device ("THDD") project.) In turn, SNC entered into a series of contracts with STAN Solutions to provide field support for THDD. As part of these contracts, STAN Solutions trained and deployed engineers and technicians in Iraq and Afghanistan to configure, maintain, and install the handheld devices on military vehicles, as well as to train soldiers on using the handheld devices and maintaining the network.

10. In the fall of 2006, and related to the THDD project, SNC solicited bids from various companies specializing in sensor technology and network systems to serve as a subcontractor on a contract SNC had been awarded with the United States Army relating to the Mine Resistant Ambush Protected vehicles, commonly referred to as the MRAP.

11. STAN Solutions submitted a bid and was awarded the subcontract. More specifically, STAN Solutions agreed to provide materials (antennas for the MRAP, including actual hardware such as cables, connectors, network systems and software) and services (STAN Solutions personnel, including engineers, who would calibrate the antennas and conduct training).

12. The agreement between the parties was a time and materials contract and was memorialized in a running purchase order (the "Purchase Order") and a "Time and Material Terms and Conditions For Non-Commercial Services and Items Issued Under Government Prime Contracts" (the "Subcontract"). The Subcontract was originally dated February 22, 2007, and later superseded by a Subcontract dated August 20, 2009. A true and accurate copy of the Purchase Order between the parties is attached as Exhibit 1, and the Subcontract dated August 20, 2009 is attached as Exhibit 2.

13. Notably, the Subcontract expressly provides that the terms of the Purchase Order took precedence over the terms of the Subcontract.

14. As specifically identified in the Purchase Order, and each subsequent STAN Solutions invoice, payment was due to STAN Solutions 15 days after SNC's receipt of an invoice.

15. As STAN Solutions performed work, it forwarded invoices to SNC identifying the work completed. Each invoice was accompanied by receipts supporting the costs of services identified in each invoice.

16. Since early 2007, SNC has consistently failed to pay STAN Solutions in accordance with the terms of the Purchase Order. In fact, during this timeframe, on average, SNC was 24 days late in paying STAN Solutions.

17. Given the highly time sensitive and critical nature of the services STAN Solutions was providing, however, STAN Solutions continued to timely perform pursuant to the Purchase Order.

18. As had been the parties' course of dealing since 2006, on May 11, 2010, STAN Solutions forwarded Invoice No. 556 in the amount of $191,289.18, along with accompanying documents,

to SNC requesting payment, net 15. A true and accurate copy of Invoice No. 556 is attached and marked as Exhibit 3.

19. Likewise, on May 20, 2010, STAN Solutions forwarded Invoice No. 557 to SNC in the amount of $27,472.75 requesting payment. A true and accurate copy of Invoice No. 557 is attached and marked as Exhibit 4.

20. Similarly, Invoice No. 558 dated June 3, 2010 in the amount of $52,918.96, and Invoice No. 559 dated June 7, 2010 in the amount of $174,792.17 followed. A true and accurate copy of Invoice Nos. 558 and 559 are attached and marked as Exhibits 5 and 6, respectively.

21. On June 18, 2010, STAN Solutions received a letter from SNC stating that, despite approving the work contained in Invoices 556, 557, 558 and 559, SNC was going to arbitrarily withhold 15% of the balance due on Invoices 556, 558 and 559, and was refusing to pay any amount on Invoice No. 557. This letter arrived after STAN Solutions had completed the work identified in the invoices and after SNC had accepted and approved the work.

22. The professed basis for the 15% hold back was that SNC was awaiting clarification as to the status of the senior engineer(s) whose time was billed on these particular invoices.

23. Remarkably, the senior engineers who had performed the work identified in Invoices 556, 557, 558 and 559 were the same engineers SNC had previously approved and whose previous work had been accepted by SNC with commendation. Furthermore, SNC refused to pay Invoice No. 557 claiming that it was not covered under the terms of the Purchase Order despite previously paying for this same identified type of work.

24. Notwithstanding SNC's improper refusal to pay STAN Solutions for the entire balance of the services STAN Solutions provided, STAN Solutions continued to provide services and perform work pursuant to the Purchase Order and Subcontract.

25. To this end, STAN Solutions issued to SNC Invoice No. 560 on July 5, 2010 in the amount of $37,117.68, Invoice No. 561 on July 6, 2010 in the amount of $152,622.85, Invoice 563 on August 4, 2010 in the amount of $175,243.79, and Invoice No. 567 on September 7, 2010 in the amount of $140,509.96. A true and accurate copy of Invoice Nos. 560, 561, 563 and 567 are attached and marked as Exhibits 7 through 10, respectively.

26. Again, SNC refused to timely pay Invoice Nos. 560, 561, 563 and 567 and again arbitrarily held back 15% of the balance due and owing on these invoices.

27. STAN Solutions immediately requested payment in full, but SNC refused.

28. Instead, SNC responded by threatening to withhold an additional $40,000.00 on the outstanding amounts.

29. Finally, on October 5, 2010, STAN Solutions issued its most recent Invoice (No. 568) in the amount of $114,528.09. A true and accurate copy of Invoice No. 568 is attached and marked as Exhibit 11 (Invoices 556, 557, 558, 559, 560, 561, 563 and 567 are collectively referred to as the "Invoices.")

30. Although fifteen days have passed, SNC has yet to pay any amount on Invoice No. 568.

31. Taken together, the unpaid balance on the Invoices totals $278,270.83.

32. At all times, STAN Solutions performed pursuant to the agreement of the parties.

33. Furthermore, the Invoices mirrored the invoices STAN Solutions had issued to SNC and which had been paid by SNC in full, over the previous three year period.

34. Nevertheless, SNC arbitrarily refused to pay the remaining 15% on Invoices 556, 558, 559, 560, 561, 563 and 567. And further, SNC has refused to pay any amount on Invoices 557 and 568.

35. On several occasions, STAN Solutions has demanded payment in full on its Invoices. STAN Solutions has also provided SNC with documents supporting its position with regard to SNC's inquiry about its senior engineers. But, to date, SNC has refused to pay the balance owed on the Invoices.

36. Moreover, as outlined in the Subcontract, STAN Solutions has made numerous efforts to resolve this payment dispute. Each of these attempts, however, has been met with an uncooperative, unhelpful, and delayed response from SNC.

37. In accordance with the terms of the Subcontract, on October 18, 2010, STAN Solutions attempted to schedule a teleconference with SNC to negotiate four critical matters, including:

   a. SNC's demand to reclaim money ($80,000) for the network mapping and configuration software licenses STAN Solutions sold to SNC;

   b. SNC's withholding of 15% on the Invoices;

   c. SNC's continual delays in payment; and

   d. Whether SNC and STAN Solutions should enter into an exclusive agreement for field service representative opportunities related to work in Iraq or Afghanistan.

38. SNC and STAN Solutions agreed on October 27, 2010 as the date for negotiation. Prior to this date, STAN Solutions repeatedly sought assurances from SNC that its representative participating in the teleconference would have the necessary authority to negotiate and bind SNC. STAN Solutions never received any assurance of this fact from SNC.

39. Then, on October 26, 2010, without explanation, SNC cancelled the October 27, 2010 negotiation.

40. On October 28, 2010, SNC sent an e-mail to STAN Solutions stating that Invoice No. 568, for which payment was overdue, "will not be paid by EFT until next week due a technical

glitch in the posting of its voucher." This improper delay caused STAN Solutions difficulty in making payroll that week.

41. On November 11, 2010, STAN Solutions asked SNC for the status of all outstanding Invoices in an effort to avoid payroll issues the following week.

42. Later in day on November 11, 2010, SNC sent an email to STAN Solutions stating that, "[u]ntil further notice, all invoices are on hold until current issues between STAN Solutions and SNC have been resolved."

43. SNC has, and continues to refuse to negotiate in good faith with STAN Solutions and refuses to pay for work performed by STAN Solutions. Yet, SNC demands that STAN Solutions continue to perform under the Subcontract without payment.

## COUNT ONE
### (Breach of Contract)

44. STAN Solutions incorporates the preceding Paragraphs of this Complaint as if the same were restated verbatim herein.

45. STAN Solutions and SNC entered into a valid and enforceable contract, memorialized in the Purchase Order, Subcontract and Invoices.

46. As set forth more fully in the Purchase Order and Invoices, STAN Solutions provided services to SNC as it had over the preceding three years and as specifically contemplated in the Purchase Order.

47. Despite completing all of the work contained in the Invoices with SNC's approval, SNC capriciously chose to withhold 15% on Invoices 556, 558, 559, 560, 561, 563 and 567 and has refused to pay any amount on Invoices 557 and 568.

48. After being notified of its breach, SNC has refused and failed to pay the $278,270.83 due and owing to STAN Solutions, even threatening to withhold an additional amount.

49. By failing to pay, SNC has breached the agreement between the parties memorialized in the Purchase Order, Subcontract and Invoices.

50. As a direct result of SNC's breach, STAN Solutions has suffered damages.

## COUNT II
### (Quantum Meruit)

51. STAN Solutions incorporates the preceding Paragraphs of this Complaint as if the same were restated verbatim herein.

52. STAN Solutions provided services to SNC at the express direction of SNC, and did so with the expectation that it would be compensated for its work.

53. In fact, on numerous prior occasions, STAN Solutions had provided identical, or at a minimum, similar work and SNC paid STAN Solutions for its work, albeit late.

54. SNC knew or should have reasonably known that STAN Solutions expected payment for the work it performed as memorialized in the Invoices and as identified in the Purchase Order.

55. SNC did not dispute the work contained in the Invoices when they received them from STAN Solutions, but rather approved the work.

56. SNC has therefore received the benefit of the work performed by STAN Solutions but has refused to pay in full for this work.

57. Consequently, STAN Solutions is entitled to recover the reasonable value of the services and materials it provided to SNC.

## COUNT III
### (Unjust Enrichment)

58. STAN Solutions incorporates the preceding Paragraphs of this Complaint as if the same were restated verbatim herein.

59. SNC received the benefit of the work provided by STAN Solutions.

60. The work performed by STAN Solutions, as approved and ratified by SNC, and in accordance with the parties' course of dealing was not performed gratuitously by STAN Solutions, and it is unjust for SNC to retain the benefit of the work without paying the value of the work, including all costs and materials.

61. By refusing to pay in full for the work performed, SNC has been unjustly enriched.

62. Pursuant to the equitable doctrine of unjust enrichment, STAN Solutions is entitled to recover the reasonable value of the work it performed.

## COUNT IV
### (Breach of Implied Duty of Good Faith and Fair Dealing)

63. STAN Solutions incorporates the preceding Paragraphs of this Complaint as if the same were restated verbatim herein.

64. Every contract contains an implied duty for parties to act in good faith and to deal fairly with each other.

65. Indeed, each party has a duty not to take opportunistic advantage in a way that could not have been contemplated at the time the parties entered the agreement, and which therefore was not resolved explicitly by the parties.

66. SNC has consistently failed to pay STAN Solutions for its invoices in a timely manner in accordance with the terms of the Purchase Order and Invoices.

67. Furthermore, without notice and after accepting the services and materials provided, SNC improperly and arbitrarily refused to pay in full for work provided and identified in Invoices 556, 558, 559, 560, 561, 563 and 567, holding back 15%.

68. When confronted with the arbitrary nature of the 15% hold back, SNC stated that it was based upon the categorization of STAN Solutions' engineers who performed work identified in the Invoices.

69. The senior engineers referenced were the exact same engineers that SNC had previously approved for performance of the same or similar work, with commendations.

70. When confronted with this fact, SNC responded by threatening to withhold payment of an additional $40,000.00 that was currently due and owing to STAN Solutions.

71. SNC has also refused to pay any amount of Invoice Nos. 557 and 568.

72. By refusing to pay STAN Solutions for work memorialized in the Invoices, SNC has taken opportunistic advantage of STAN Solutions in a way not contemplated by either party at the time of they agreed to the terms of the Purchase Order.

73. STAN Solutions has acted in bad faith by unilaterally altering the terms of the agreement between the parties, failing to provide any explanation for its actions, and by failing to cooperate with STAN Solutions by paying in full the amount identified in the Invoices.

74. In addition, pursuant to the Subcontract, STAN Solutions has made numerous attempts to resolve this matter amicably through negotiation and mutual agreement. Each of these attempts, however, has been rebuffed by SNC and has been met with excuse after excuse and without any substantive response or attempt at a response by SNC.

WHEREFORE, Plaintiff, STAN Solutions, LLC, demands judgment against Defendant, Sierra Nevada Corporation in the amount of $278,270.83, along with pre-judgment interest, attorneys fees, and costs in an amount to be determined by this Court, together with any and all other relief as this Court shall deem appropriate.

/s/ Christopher M. Brown
Suzanne Sumner (0079028)
Christopher M. Brown (0076649)
Taft Stettinius & Hollister LLP
110 North Main Street, Suite 900
Dayton, Ohio 45402
Phone: (937) 228-2838
Fax: (937) 228-2816
ssumner@taftlaw.com
brownc@taftlaw.com

Attorneys for Plaintiff
STAN Solutions, LLC